IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MARY MOTES, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:15-CV-00373-RWS |
| | § | |
| v. | § | |
| | § | |
| TIME WARNER CABLE PENSION PLAN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiff Mary Motes ("Motes") seeks to obtain pension benefits from Defendant Time Warner Cable Pension Plan ("TWCPP"). The Court held a bench trial in this matter on July 11, 2017. Docket No. 49 ("Tr.") at 4:1.

**A.  Background**

**1. Positions of the Parties**

Motes alleges four primary facts. First, Motes alleges that from 1980 to 1986, she was an employee of one or more subsidiaries or affiliates of Group W Cable, Inc. ("Group W" or "Westinghouse").[1] Second, Motes alleges that during her period of employment at Group W, she became vested in the Group W's pension plan (the "Group W Plan" or "Westinghouse Plan"). Third, she alleges that Paragon Communications ("Paragon") acquired or merged with Group W such that the obligations of the Group W Plan were absorbed by the Paragon Communications

---

[1] The Court understands that Group W was a subsidiary of Westinghouse. The exact relationship between Group W and Westinghouse is immaterial to the analysis, and the Court uses "Group W" and "Westinghouse" interchangeably in its analysis.

Pension Plan (the "Paragon Plan"). Finally, Motes alleges that Time Warner Cable subsequently acquired Paragon, and the Paragon Plan was absorbed into the TWCPP in 1995.

TWCPP does not contest that Motes worked at Group W or the duration of Motes's employment at Group W. Nor does TWCPP contest that Motes became fully vested in the Group W Plan, saying only that it lacks the information to determine whether Motes became fully vested in the Group W Plan. TWCPP admits that TWCPP assumed the obligations of the Paragon Plan. TWCPP contests that the Paragon Plan ever took on the pension obligations of the Group W Plan or that Motes otherwise became a Participant in the Paragon Plan. *E.g.*, Tr. at 20:8–14.

### 2. Evidence to Be Considered

The parties agreed at trial that the only proper evidence before the Court is contained within the administrative record of the proceedings before the Claims Committee of the TWCPP. Tr. at 6:23–7:19, 8:15–21; *see also Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299–300 (5th Cir. 1999) (en banc), *abrogated in part on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Court will refer to the administrative record according to the Bates numbers used therein in its analysis below.

### B. Legal Standards

A denial of benefits under an ERISA plan is reviewed either *de novo* or, where the plan delegates discretionary authority to determine benefits eligibility to the plan administrator, for abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Generally, a claimant has the burden of proving he is entitled to benefits from an ERISA plan. *E.g.*, *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). However, ERISA requires the plan to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Accordingly, once the claimant establishes a prima facie case of entitlement to benefits, the failure to maintain such

records may result in the Court shifting the burden onto the plan to prove that the claimant is not entitled to benefits. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1066–69 (9th Cir. 2016); *Combs v. King*, 764 F.2d 818, 825–27 (11th Cir. 1985).

### C. Discussion

The Paragon Plan and TWCPP both give their administrators discretion to determine benefits eligibility. Admin.Rec_000068 at ¶11.4 (TWCPP); Admin.Rec_000127 at ¶8.3 (Paragon).[2] Accordingly, the Court reviews the denial of benefits for abuse of discretion. *Firestone*, 489 U.S. at 115; *see also* Tr. at 9:14-18.

The correctness of the denial of benefits in this case turns on whether the Paragon Plan assumed the pension obligations of the Group W Plan. *See* Tr. at 20:6–10. Whether Motes became vested in the Group W Plan is not contested by TWCPP, which asserts that it does not have sufficient information about the Group W Plan to confirm or refute Motes's claim. *See id.* at 17:16–17; 19:8–12. Further, TWCPP admits that it assumed the pension obligations of the Paragon Plan. *See e.g.*, Tr. at 24:21–23. Thus, the primary dispute between the parties is whether the Paragon Plan assumed the pension obligations of the Group W Plan.

Motes asserts that that the burden of proof with respect to the Paragon Plan assuming the obligations of the Group W Plan should fall on TWCPP under 29 U.S.C. § 1059(a)(1) because Paragon is in a better position than Motes to have maintained records of Paragon's putative acquisition of Group W. *See* Tr. at 13:13–21. TWCPP asserts that Paragon never acquired Group

---

[2] Although the Paragon Plan in the record is dated 1994 and therefore may not be identical to the plan in force in 1986, the 1994 Paragon Plan is the best evidence before the Court of the provisions of the Paragon Plan. Neither party presented any evidence that the 1986 Paragon Plan differed in any respect from the 1994 Paragon Plan.

W or assumed Group W's pension obligations and that shifting the burden to TWCPP to prove that Paragon did not assume the obligations of Group W would be improper. *Id.* at 21:12–16. At trial, counsel for TWCPP speculated that those obligations might have remained with Westinghouse (now CBS). *Id.* at 26:8–15; 27:13–28:7.

Whether the burden of proof should shift to TWCPP depends on whether Paragon assumed the pension liabilities of Group W. If the pension liabilities of Group W remained with Westinghouse, then there would be no reason for TWCPP to have any documents reflecting either (a) a corporate transaction involving assumption of pension liabilities between Group W and Paragon or (b) Motes's participation in the Paragon Plan. On the other hand, if there really was a transaction by which Group W transferred its pension obligations to Paragon, then Motes is correct that TWCPP, as Paragon's successor, is obligated by ERISA to have maintained records reflecting that transaction, the assumption of pension responsibilities and Motes's participation. Neither party is in a better position to prove the alleged transaction, and the burden of establishing the Paragon Plan's assumption of the Group W Plan's obligations accordingly remains with Motes (i.e., does not shift to TWCPP).

At trial, Motes offered evidence that Paragon had assumed Group W's pension liability. As discussed below, however, the alleged direct evidence does not show that Motes was a Participant in the Paragon Plan or that the Paragon Plan assumed the pension liability of the Group W Plan. Further, the alleged circumstantial evidence is too unreliable to establish a prima facie case of entitlement to benefits.

### 1. Direct Evidence

Motes offered, as direct evidence of Paragon's assumption of pension liabilities, ¶ 1.35 of the Paragon Plan, which provides that "[a] Period of Service shall include for purposes of eligibility and vesting all service with ATC, Houston, Group W and all subsidiaries of Group W."

Admin.Rec_000105.  At trial, counsel for TWCPP explained that this provision only applied to Group W employees who transferred to work at Paragon and that pension plans frequently include similar provisions to encourage employees of competitors to transfer.  Tr. at 24:25–25:4; 33:1–17.  The text of ¶ 1.35 supports TWCPP's position by providing, in the immediately preceding sentence, that "Periods of Service may include employment or a part thereof with [any party to the Plan or] any other company not a party to this Plan *provided that such employees shall thereafter be transferred to an Employer which is a party to this Plan*."  *Id.* (emphasis added).  Accordingly, this provision only applies if Motes ever transferred to an Employer which was a party to the Paragon Plan.

Motes has not established that she was ever employed by an Employer which was a party to the Paragon Plan.  Social Security records provided by Ms. Motes (Admin.Rec_000176–77) reflect that Motes's last employer was "GWC 63 INC."  Admin.Rec_000177.  Motes indicated on the copy of the record she submitted to the TWCPP that "GWC" stands for Group W Cable.  *Id.*  However, Motes has not established that Group W Cable was ever a party to the Paragon Plan.  In sum, Motes's quoted provision of the Paragon Plan does not establish that she ever became a Participant in the Paragon Plan.

### 2. Circumstantial Evidence

Motes also offers a Pension Plan Statement from Paragon Communications reflecting that the statement's recipient had accrued $275 of pension benefit as of December 31, 1987 and an additional $150 of benefit during the 1988 Plan Year for a Total Accrued Benefit of $425 as of December 21, 1988.  Admin.Rec_000173.  The statement further reflects that its recipient was "fully vested," at the latest, by December 31, 1988.  *Id.*  The Statement does not bear Motes's name.  Further, counsel for TWCPP argued at trial that because the document reflects benefit

accrual in 1988 and Motes was not working in 1988, the document must pertain to someone other than Motes.  Tr. at 30:8–31:10.

Motes additionally submitted a Memorandum from Time Warner Cable dated December, 1997 and reflecting that its recipient is "a deferred vested participant in the Pension Plan." Admin.Rec_000178.  As with the Pension Plan Statement, this letter does not bear the name of its addressee.

Motes also attached a statement of "Employee Benefits at Westinghouse," which shows her accrued benefits as of December 31, 1983.  Admin.Rec_000180.  The document reflects that Motes had accrued $42.00 of benefits and that, if she continued "at [her then] benefit rate of pay and ha[d] no breaks in Credited Service up to [her] Normal Retirement Date of November 1, 1995 [her] monthly pension [would have been]: $207.62 UNDER THE BASIC PORTION."  *Id.* (capitalization in original).

The 1988 Paragon Communications Pension Plan Statement and 1997 Time Warner Cable Memorandum provide circumstantial evidence that Motes was a vested participant in the Paragon Plan.  Motes asserts that she was the recipient of both documents.  At trial, TWCPP could not explain how Motes acquired the documents she submitted to the Plan unless they had been delivered to her.  Tr. at 30:2–7.  TWCPP's counsel speculated, in response to the Court's inquiries, that Motes may have obtained the documents from a friend who received benefits around the same time.  *Id.* at 38:15–16.  In sum, considering the two documents in isolation, the Court gives some weight to Motes's possession of the documents, but this weight is minimal because of the inconsistency between the contents of the 1988 Pension Plan Statement and Motes's undisputed work record.

The 1988 Pension Plan Statement and 1997 Memorandum are entitled to even less weight in light of the 1983 Westinghouse benefits statement. Specifically, the 1988 Pension Plan Statement appears to be inconsistent with the statement of Employee Benefits at Westinghouse. The record does not explain what changes in Motes's earnings or benefit structure allowed her to accrue $275 of benefit by December 31, 1987 when, under the Westinghouse Plan, she would only have accrued $207.62 of benefit by December 31, 1995. *Compare* Admin.Rec_000175 *with* Admin.Rec_000180. Motes's Social Security records show that her earnings in 1985, for example, were almost identical to her earnings in 1983, *see* Admin.Rec_000176–77, and Motes has not offered evidence of an intervening change in plans that might explain the apparent disjunction.

In sum, the evidence does not establish a prima facie case that Motes ever became a Participant in the Paragon Plan or that Paragon assumed the pension obligations of Group W. Because Motes did not establish a prima facie case, TWCPP did not have the burden to produce records reflecting Motes's entitlement to benefits. Under the circumstances, TWCPP did not abuse its discretion in denying benefits to Motes. Accordingly, it is

**ORDERED** that judgment be entered in favor of Defendant Time Warner Cable Pension Plan.

 **SIGNED this 18th day of July, 2017.**

*[signature: Robert W Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE